**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| **Samuel T. Williams,** <br> **Plaintiff,** | ) <br> ) <br> ) | |
| **v.** | ) | **1:13cv843 (LO/TCB)** |
| **Cpl. DeJesus, et al.,** <br> **Defendants.** | ) <br> ) <br> ) | |

MEMORANDUM OPINION

Samuel T. Williams, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his First Amendment right to freely practice his religion. On March 13, 2014, defendant filed a Motion for Summary Judgment. Dkt. 13. Plaintiff was provided with the notice required under Local Civil Rule 7(K) and by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and he opted not to file a response. For the reasons that follow, defendant's Motion will be granted, and judgment will be entered in favor of Corporal DeJesus.

**I. Background**

Plaintiff, an inmate at the Virginia Beach Correctional Center ("VBCC"), received a book entitled the Satanic Bible in the mail on June 7, 2013. See Compl. [Dkt. 1], at 5; Memorandum of Law in Support of Defendant DeJesus' Motion for Summary Judgment ("Def.'s Mem.") [Dkt. 14], Ex. 1 (DeJesus Aff.) ¶ 4. The Satanic Bible "'advocates [murder], exaction of vengeance through violence, mutilation and murder of anyone a Satanist believes to be his enemy . . . [and] challenges its readers to rebel against the law of man and engage in symbolic acts of violence against one's enemies." Def.'s Mem., at 5 (quoting Burton v. Frank, No. 03-C-0374-C, 2004 WL 1176171, at * 4 (W.D. Wis. May 20, 2004)). Plaintiff had ordered this book from Books-A-Million, a vendor

approved to mail books to VBCC inmates. Compl., at 5. Pursuant to VBCC policy, defendant, who is the mailroom supervisor at VBCC, reviewed the book "to ensure compliance with . . . policies regarding permissible mail and publications." Def.'s Mem., Ex. 1 ¶¶ 1, 5. Under this policy, any incoming mail that could be detrimental to safety or security is considered to be contraband. See Def.'s Mem., Ex. 6 (Stolle Aff.) ¶ 3; see also Def.'s Mem., Ex. 4 ¶ VI.F.1-6. In addition, all incoming religious material must be provided to the inmate by a religious organization, and must be reviewed by the chaplain. See Def.'s Mem., Ex. 6 ¶ 6; Ex. 4 ¶ VI.F.13.

On June 7, 2013, the defendant reviewed the Satanic Bible and found that it contained material that would be detrimental to the safety and security of the institution. See Def.'s Mem., Ex. 1 ¶ 7. Accordingly, he gave plaintiff a "Mail Restriction Form," consistent with VBCC mailroom policies. See id. ¶ 8. When inmate mail is subject to restriction, the inmate receives this form, which explains the reason for the restriction and the inmate appeal process. Id. ¶ 6. After receiving this form, plaintiff submitted an inmate request form to defendant, "challenging the seizure of [his] bible" on First Amendment grounds. See Compl, at 5; Def.'s Mem., Ex. 3. Defendant responded to this request, stating that, as all religious material must be screened by the chaplain, plaintiff needed to appeal the seizure to the chaplain. See Def.'s Mem., Ex. 3; Ex. 6 ¶ 6. Defendant informed plaintiff that the chaplain would examine the book and determine whether plaintiff could possess it. Compl., at 5; Plaintiff's Exhaustion Affidavit [Dkt. 5], at unnumbered page 6.

On June 28, 2013, defendant issued a second mail restriction form to plaintiff, after the chaplain upheld the defendant's initial restriction. See Def.'s Mem., Ex. 2; Ex. 1 ¶ 1. The chaplain found that the Satanic Bible promoted hatred, violence, and anarchy, and was thus not appropriate for possession in the institution. Def.'s Mem., Ex. 2. Plaintiff challenges this

decision, saying that the "Holy Bible talks about the same topics." Compl., at 5. He alleges that the defendants are discriminating against him and violating his First Amendment right to freely exercise his religion. Id.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment as a matter of law is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once the moving party has met its burden, the burden then shifts to the nonmoving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Thus, summary judgment is appropriate

only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. Analysis

Summary judgment is appropriate in favor of defendant DeJesus because the evidence shows that he, through the enforcement of VBCC's mailroom regulations, did not violate plaintiff's First Amendment rights. The regulation enforced by the defendant is a reasonable restriction on plaintiff's First Amendment rights.[1]

### A. Defendant DeJesus' Personal Involvement

As an initial matter, it is unclear whether the defendant played a sufficient personal role in the complained-of actions to be liable under § 1983. To hold a defendant liable under § 1983, a plaintiff must allege facts indicating that he was deprived of rights guaranteed by the Constitution or laws of the United States, and that this deprivation resulted from conduct committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). Thus, a plaintiff must allege facts sufficient to show that a defendant personally committed acts that deprived him of his constitutional rights. See, e.g., Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotations omitted). Here, the defendant made the decision to deny plaintiff access to the Satanic Bible in accordance with VBCC's policies and procedures. The defendant made this decision solely because he believed that the book posed a risk to institution safety and security. There is no indication that this decision was motivated by plaintiff's religion or the religious nature of the book. In addition, the defendant's decision was subject to approval by the chaplain. Thus, it is the chaplain's decision, rather than the defendant's, that ultimately led

[1] Because it is clear that defendant did not violate plaintiff's First Amendment rights, there is no need to analyze the defendant's separate argument of qualified immunity.

to plaintiff not receiving the book. This participation by the defendant is likely not sufficient to hold him liable under § 1983. See Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (finding that defendant was not sufficiently personally involved in an allegedly unconstitutional adjustment team hearing when he received a letter from plaintiff about the hearing, but was not actually present at the hearing itself),

B. Defendant DeJesus did not Violate Plaintiff's First Amendment Rights

Even if the defendant could be held personally liable under § 1983, however, it is clear, from the facts provided, that he did not violate plaintiff's First Amendment rights. Plaintiff claims that the seizure of the Satanic Bible violated his right to freely exercise his religion. He thus challenges the defendant's action in seizing his Satanic Bible, and, more fundamentally, the regulation under which defendant took this action.

Determining whether a regulation violates the Free Exercise Clause requires determining whether the regulation imposes a substantial burden on the exercise of religion, and, if so, whether that burden is justified by a compelling state interest. Hernandez v. Comm'r., 490 U.S. 680, 699 (1989). The question of whether a plaintiff sincerely holds a "religious" belief does not "turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 715 (1981). A plaintiff must, however, make a threshold showing that he sincerely holds his religious belief. Cf. id. at 717 (finding that the "narrow function" of a court reviewing a Free Exercise challenge is to determine whether the plaintiff took a specific action because of his religious beliefs). The question of whether a regulation imposes a "substantial burden" has been framed in a number of ways, including "putting substantial pressure on an adherent to modify his behavior and violate his

beliefs," Thomas 450 U.S. at 717-18, and forcing an individual to "choose between following the precepts of [his] religion and forfeiting benefit, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other," Sherbert v. Verner, 374 U.S. 398, 404 (1963).

However, prisoners do not maintain the same degree of First Amendment rights as the general public. Specifically, "[a] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Accordingly, an inmate does not have the same protection from restrictions on their right to practice their religion as members of the general public, and prison officials may enact restrictions on an inmate's ability to practice his religion, as long as the officials can show that the restrictions are reasonably related to legitimate penological interests. See, e.g., O'Lone v. Estate of Shabazz, 482 U.S. 342, 350 (1987) (rejecting the idea that prison staff must prove that their chosen method of running an institution is the least burdensome to an inmate's First Amendment rights) . If an inmate can make a threshold showing that his rights under the Free Exercise Clause have been violated, courts analyze whether the restriction on the right is reasonably related to a legitimate penological interest. The plaintiff has the burden of proving that a particular regulation or practice is unreasonable. See Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

Plaintiff has not provided any facts to indicate what religious belief he holds, or any indication that his beliefs are sincere. However, as it is not the role of courts to scrutinize an individual's religious beliefs, Thomas, 470 U.S. at 714, this Court will assume without deciding that the seizure of the Satanic Bible substantially burdened the exercise of plainitff's religious beliefs. Even making such an assumption, however, it is clear that the VBCC's regulation preventing plainitff from possessing such a book does not violate the First Amendment.

When determining whether a regulation is reasonably related to legitimate penological interests, this Court must defer to the judgments of prison administrators. See, e.g., Turner v. Safley, 482 U.S. 78, 89 (1987) (internal citations omitted). To assess the reasonableness of a particular prison regulation, courts look to several factors, keeping in mind the deferential treatment owed to prison administrators. First, "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." Thus, the regulation must be content-neutral and not create arbitrary classifications. Second, courts should examine whether "there are alternative means of exercising the right that remain open to prison inmates." Third, courts should determine "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of resources generally." Last, a court should look to the absence of other ready alternatives to the regulation. The absence of meaningful alternatives is in itself evidence of a regulation's reasonableness. Turner, 482 U.S. at 89-90.

Viewed through the Turner factors, it is clear that the regulation – and the defendant's subsequent action – challenged by plaintiff is reasonable. First, prison officials clearly have a legitimate interest in keeping prisons safe and secure. Indeed, maintaining institutional safety is one of prison administrators' most important functions. See, e.g., Pell v. Procunier, 417 U.S. 817, 822-23 (1974). Thus, VBCC staff, like the defendant, have a great interest in ensuring that publications advocating topics harmful to institutional security, do not reach the inmate population. Second, there is no evidence in the record to show that plaintiff has been completely deprived of his ability to practice religion. The regulation does not prevent the receipt of all religious material. Rather, religious material must be screened by the chaplain and approved for inmate use. Thus, the regulation balances the religious rights of inmates with the need to protect

institutional safety. Third, were VBCC staff to allow plaintiff to possess the Satanic Bible, its teachings of violence and hatred could other inmates at risk of harm, greatly straining prison resources and guards' energy. Last, there do not appear to be any other reasonable alternatives to the VBCC's mail policy. There is no way to prevent disruptive materials from reaching the inmate population other than simply not providing these materials to inmates. Accordingly, the regulation clearly withstands scrutiny under the Turner factors.

Other courts that have considered the ability of inmates to access the Satanic Bible have come to the same conclusion. The Eleventh Circuit held, for example, that the teachings of the book, including "wrist-slashing, blood-drinking, [] the consumption of human flesh," and the belief that "life should be lived according to individual desires without regard for conscience or consequences," "cannot be tolerated in a prison environment." McCorkle v. Johnson, 881 F.2d 993, 994 (11th Cir. 1989 (per curiam). The court thus found that restrictions on the ability of inmates to possess such material were reasonable. Id. Many other courts have found that "prohibiting possession of the Satanic Bible does not substantially burden the plaintiff's ability to practice his 'religion' and is validated by legitimate penological concerns for safety and security." Carpenter v. Wilson, 946 F. Supp. 522, 530 (N.D. Ohio 1996); see also Johnson v. Wilson, No. 3:07-cv-1659-HZ, 2011 WL 6778711, at *7-*10 (D. Or. Dec. 22, 2011) (citing several cases reaching the same conclusion) (internal citations omitted). As in Carpenter, plaintiff does not assert that the defendant has completely denied him the ability to practice his religion, and it is clear that the restrictions imposed on his ability to possess the Satanic Bible are reasonably related to legitimate penological interests. Accordingly, defendant's Motion must be granted.[2]

[2] Chaplain S. Christianson was originally named as a defendant in this action. Although he executed and returned a waiver of service, he did not file any motion in response to plaintiff's complaint. For the reasons stated above, Christianson's decision not to allow plaintiff to possess

## IV. Conclusion

As the evidence is clear that defendant DeJesus did not violate plaintiff's First Amendment rights, the defendant's Motion for Summary Judgment must be granted. An appropriate judgment and Order shall issue.

Entered this 9th day of March 2015.

Alexandria, Virginia

/s/

Liam O'Grady
United States District Judge

---

the Satanic Bible did not violate plaintiff's First Amendment rights. Accordingly, Christianson will be dismissed as a defendant.